"O"

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

TRISH O'NEIL,                          )     Case No. EDCV 05-00985-MLG
                                       )
                    Plaintiff,         )     ORDER REVERSING DECISION
                                       )         OF COMMISSIONER
          v.                           )
                                       )
JO ANNE B. BARNHART,                   )
Commissioner of the                    )
Social Security                        )
Administration,                        )
                                       )
                    Defendant.         )
_____)

     The Court now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("Jt Stip").[1]


1.   The Administrative Law Judge ("ALJ") did not properly consider all
     of the available medical evidence or an examining physician, which
     resulted in an incomplete hypothetical question.

_____

     [1]     As the Court advised the parties in its Case Management Order,
the decision in this case is being made on the basis of the
Administrative Record ("AR") and the Joint Stipulation filed by the
parties.  In accordance with Rule 12(c) of the Federal Rules of Civil
Procedure, the Court has determined which party is entitled to judgment
under the standards set forth in 42 U.S.C. § 405(g).

1     Plaintiff contends that the ALJ failed to consider all of the
2 medical evidence.  Plaintiff specifically contends that the ALJ erred in
3 failing to properly consider the opinion of consultative examiner
4 Jagvinder Singh, M.D., finding that Plaintiff suffered from uncontrolled
5 urinary and bowel incontinence, as supporting a finding of disability.
6 (JS at 3).  The Court agrees with this contention.

7     The Court further finds that the ALJ failed to pose a complete
8 hypothetical to the Vocational Expert ("VE"), one which included the
9 requirement that Plaintiff take frequent restroom breaks. In addition,
10 the ALJ failed to consider the VE's answer to a hypothetical question
11 posed by Plaintiff's attorney to the VE, which discussed the impact of
12 the need for frequent restroom breaks on the ability to perform
13 substantial gainful employment.

14     The evidence shows that Plaintiff suffers from urinary and bowel
15 incontinence.  At the hearing, Plaintiff testified:

16     [ATTORNEY]      Okay.  And I've noted in a number of places where
17                     you've complained about incontinence with the
18                     bladder and the bowel.  Do you still have those
19                     problems or has it gotten better?
20     [PLAINTIFF]     No, I still have that problem.
21     [ATTORNEY]      Has - is it about the same over the last year or
22                     two or is it getting -
23     [PLAINTIFF]     Yeah.  I don't eat [INAUDIBLE} or I will not eat
24                     because I'm afraid of low - loose bowel movements.
25     [ATTORNEY]      I see.  Is it an urgent problem where you have to
26                     stop what you're doing and go or -
27     [PLAINTIFF]     No.
28     [ATTORNEY]      - is it a matter of frequency or what?

2

1    [PLAINTIFF]     I have not feeling, sign, or anything, any warning,
2                    that's it, at all.
3    [ATTORNEY]      I see.
4    [PLAINTIFF]     No warning to let me know like, you know, gas pains
5                    or, excuse my –
6    [ATTORNEY]      Right.
7    [PLAINTIFF]     – expression.  I have no signs whatsoever.
8    [ATTORNEY]      How long have you had the incontinence problem?
9    [PLAINTIFF]     I've had that since 2000, April 2000.
10   [ATTORNEY]      Is –
11   [PLAINTIFF]     That's what made me leave that job.[2]

In addition, medical consultant D. Dipasquale noted that Plaintiff suffered from bowel and urinary incontinence.  (AR at 203, 205). Dipasquale assigned Plaintiff with a secondary diagnosis of incontinence and opined that Plaintiff required a work place with access to a bathroom.  (AR at 204, 209, 211).

Finally, in his report, Dr. Singh stated that Plaintiff "has urge urinary incontinence, and also urge bowel incontinence.  She is taking medication for her bladder problems, but no medication nor treatment for her bowel incontinence.  She seems very ashamed of this condition, and has to use diapers when she goes out."  (AR at 186).  He also opines that Plaintiff "might need frequent breaks to use the restroom."  (AR at 186).

The Court finds that the ALJ failed to adequately consider the

_____

[2]  Because the Court is remanding this case due to the failure of the ALJ to adequately consider the medical evidence, it will not consider Plaintiff's arguments concerning the ALJ's credibility determination.

3

opinion of the consultative examiner or Plaintiff's testimony concerning her incontinence.  Although the ALJ acknowledges this existence of the problem in his decision, he fails to evaluate its severity or its effect on Plaintiff's ability to work.  More significantly however, the ALJ did not provide clear and convincing reasons for implicitly rejecting the opinion of Dr. Singh in his decision regarding the incontinence.

If the opinion of a treating or examining physician is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  *Id*.  Nevertheless, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Here, the ALJ neither properly considered the limitation set forth by Dr. Singh, nor provided clear and convincing reasons for rejecting the doctor's opinion.  That was error.

Adding to this error, the ALJ failed to pose a hypothetical to the VE which included a need for frequent restroom breaks.  Moreover, even though Plaintiff's attorney posed such a question at the hearing, one which posited frequent breaks totaling 10 percent of a 40 hour work-week, the ALJ failed to consider the testimony of the VE.

[ATTORNEY]      Okay.  All right.  Now, the - if the person, due to pain, medications, restroom breaks, whatever, the need to lay down, if the person was going to be off task, Ms. Lasoff, say, 10 percent of the day - or the week, let's say, let's use a week as an example, and that could be a whole

4

1                    bunch of 15-minute breaks, it could be a couple two-hour

2                    breaks, it may be one bad day where they're just gone for

3                    four hours.  You know, they couldn't function in the

4                    morning or later in the day or something, but a total of

5                    four hours and that's it in the whole week, but it's

6                    unpredictable, are either of those jobs [quality control

7                    inspector 194.387-010 and assembler 726.684-034]

8                    performable with that problem?

9  [VE]            They would have - not with any continuity, no.

10  [ATTORNEY]     Okay.  It would just be too disruptive because - is it

11                   the time or the unscheduled nature or both?

12  [VE]            Both, the way you described it.  I mean, if someone

13                   needed to take four hours off every week, an employer

14                   wouldn't -

15  [ATTORNEY]     Wouldn't tolerate that?

16  [VE]            - be able to accommodate that.

17  [ATTORNEY]     All right.  These are pretty competitive occupations?

18  [VE]            Well, I think no more than any other job but with those -

19                   with that amount of time off -

20  [ATTORNEY]     Right.

21  [VE]            - they wouldn't be able to sustain employment.

22  (AR 51-52).

23     This testimony shows that a person with Plaintiff's Residual

24  Functional Capacity ("RFC") and the limitation of the need for frequent

25  restroom breaks due to bowel and urinary incontinence would not be able

26  to sustain employment.  The Court finds that the ALJ failed to pose the

27  correct vocational limitation in his hypothetical and that he failed to

28

properly consider the VE's testimony regarding such breaks.[3]

### Order

Remand is appropriate in this case for a determination of whether Plaintiff suffers from the urinary and bowel incontinence described in Dr. Singh's report. Once it is determined whether such a limitation or disability exists, a fully informed determination must be made concerning whether there exist any jobs that Plaintiff can perform in the national economy.

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security, and remanding this matter for further administrative proceedings consistent with this Order.

DATED: June 23, 2006                    */s/ Marc L. Goldman*

_____
Marc L. Goldman
United States Magistrate Judge

---

[3] Plaintiff also argues that the ALJ failed to consider the medical reports showing Plaintiff's high hemoglobin levels, as well as an x-ray which notes "marked narrowing of the L5-S1 disc space from degenerative disc disease." (JS at 4; AR at 216). This argument is without merit. Plaintiff has the obligation to demonstrate the existence of a disabling impairment or symptom. It is not the task of the ALJ to interpret raw medical evidence or discuss each piece of medical evidence. Thus, the ALJ was under no duty to consider these factors, particularly when they did not form the basis of the disability claim. If the Plaintiff had wanted these factors considered, she had the opportunity to underscore them during the hearing.